Steven **GREGG**, Plaintiff-Appellant,

v.

**ALLEN–BRADLEY CO.,**
**Defendant-Appellee.**

No. 85–1277.

United States Court of Appeals,
Sixth Circuit.

Argued April 22, 1986.

Decided Sept. 23, 1986.

Robert V. Seymour (argued), Southfield, Mich., for defendant-appellee.

---

Paul A. Rosen, Goodman, Eden, Millender & Bedrosian, Detroit, Mich., Julie A. Gibson (argued), for plaintiff-appellant.

Before MERRITT and JONES, Circuit Judges, and THOMAS, Senior District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Plaintiff Steven Gregg initiated this case in the state court of Michigan. On defendant Allen-Bradley's motion, the case was subsequently removed to the District Court for the Eastern District of Michigan. Gregg alleged that he was injured because of an unsafe foot switch manufactured by Allen-Bradley and attached to a die press on which he was working. On October 30, 1984, Allen-Bradley filed a motion for summary judgment on the ground that there was no issue of material fact that the foot switch had anything to do with Gregg's injury. After considering the parties' briefs and oral arguments, the district court granted the motion. We affirm.

Gregg was employed as a die-setter at Sheller-Globe Corporation in Livonia, Michigan. His responsibilities included the repair and installation of die sets used to form steel parts. The allegedly defective foot switch was used to operate one of Sheller-Globe's mechanical power presses, Cleveland Press # 18.

Cleveland Press # 18 had been manufactured in 1949. Sheller-Globe purchased it in used condition in 1971. The press had two different modes of operation: the run/continuous mode and the inch mode. The particular mode of operation was selected by turning a key selector switch located on the control panel on the side of the press. For the press to operate in the run mode, the key had to be turned to the left; to operate in the inch mode, the key had to be turned to the right.

In the run mode, the press was activated by an electrical foot switch attached to the bottom of the press. Once activated, the ram would go from the top of the press, down to the bottom of the press and back to rest at the top of the press. The foot switch attached to Cleveland Press # 18 was allegedly manufactured and sold by Allen-Bradley.

One point of contention in this case is the operation of the press while in the inch mode. All testimony in the depositions and affidavits indicated that the inch mode on Cleveland Press # 18 is activated by an inch button located on the control panel on the side of the press, and could only be activated by hand. When the inch button is pressed, the ram moves to the bottom of the press and back to the top in small separate increments. The electrical foot switch could not activate the press while in the inch mode because the inch circuit bypasses the circuitry that controls operation of the foot switch.

On August 30, 1978, the machine operator of Cleveland Press # 18 experienced a problem with a part that became lodged in the lower die. The operator sought the assistance of Gregg to fix the problem. Gregg first went to the central box and turned the selector key to the inch mode. He then went to the back of the press where he increased the air pressure in order to eject the part. According to his testimony, he wanted to inspect the dies for damage so he began removing bolts that held the lower die in place. While removing the bolts, the ram came down and crushed his right hand. Gregg cannot remember stepping on the foot switch. However, he theorizes that the only way he could have activated the press was if he stepped on the foot switch.

Gregg and his wife later filed suit against Allen-Bradley under theories of negligence and breach of warranty. They alleged that the electrical foot switch manufactured and sold by Allen-Bradley was a proximate cause of his injuries essentially because there was not a safeguard around the foot switch to protect someone from

* Honorable William K. Thomas, United States District Court for the Northern District of Ohio, sitting by designation.

inadvertently activating the press. Allen-Bradley filed a motion for summary judgment on the basis that the foot switch could not activate the press while in the inch mode and therefore could not have been the proximate cause of the accident. The district court found no genuine issue of material fact as to this point. It further found that the undisputed facts revealed that the foot switch was not a proximate cause of Gregg's injuries and, therefore, granted the motion.

Summary judgment is an appropriate means of disposing of a case where there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). The district court must view the evidence with all inferences drawn therefrom read in the light most favorable to the party opposing the motion. *Id.*

Once the moving party presents evidence sufficient to support the motion under Rule 56(c), the adverse party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The nonmoving party is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918–19 (6th Cir.1982). Thus Rule 56(e) requires a shifting of burdens to the opposing party if the moving party has satisfied Rule 56(c). If the court finds after reviewing the evidence that no genuine issue of material fact exists, the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

Under the fact scenario in this case, Allen-Bradley needed to establish the following: 1) that Cleveland Press # 18 had two distinct, separate and alternative modes of operation—the run mode and the inch mode; 2) that Cleveland Press # 18 was in the inch mode at the time of the accident; and 3) that while in the inch mode, the foot switch could not activate the press to cause the ram to come down. With these three facts established, there would be no disputed fact that the foot switch was not a proximate cause of the accident. The district court found, and the record shows, that the press had two different modes of operation and that the press was in the inch mode at the time of the accident. Gregg does not dispute these findings on appeal. The third proposition is the point of contention in this case.

Allen-Bradley presented affidavits and/or deposition testimony of a number of experts and witnesses concerning the operation of Cleveland Press # 18. Robert L. Westover, a diesetter at the plant at the time of the accident, stated in his affidavit of October 3, 1984, that the press on Cleveland Press # 18 could only be activated in the inch mode by pushing the inch button on the control panel and not by the foot switch "during the period of my employment and particularly on August 30, 1978." This statement was also made by Robert E. Wisley, a foreman at the plant, in his affidavit dated October 3, 1984.

Frank Wilmer, a Chief Engineer with Cleveland Punch, manufacturer of the press, stated in his affidavit of October 1, 1984, that in his experience "when the power press such as the Cleveland Press # 18, was in the inch mode, activation of the foot switch would not cause the ram of the press to descend." Allen Bradley's expert witness, Engineer David Fisher, examined the press on November 22, 1984. He stated that the foot switch would not activate the press while it was operating in the inch mode. Finally, Gregg's own expert witness, Simon Tamny, testified that the foot switch would not activate the press while in the inch mode when he inspected the press on June 11, 1981.

The crux of Gregg's argument is that Allen-Bradley may have established that the foot switch, at some point in time, may not have been able to activate the press while in the inch mode, but the evidence

relied on does not show conclusively that this situation existed on the date of the accident. Gregg refers first to the affidavit testimony of Westover and Wisley. In the district court, Gregg offered the affidavit of his counsel, which purports to summarize second statements given by the two men prior to the hearing on the summary judgment motion. There is a dispute by the parties over whether Gregg's counsel's affidavit should be considered, but for the sake of argument we will discuss it here.[1] Wisley stated that there were long periods of time when he did not run the press, so he responded to counsel's question regarding the operation of the foot switch while in the inch mode, "Well anything is possible ... It could be that way." Westover opined that Gregg may not have placed the press in the inch mode and inadvertently pressed the foot switch, and further, that Gregg could not have reached the inch button from where he was found following the accident.

We are not sure what Gregg seeks to show by these statements, but they do not disprove or contradict the earlier statements made in the affidavits. While Wisley may find it conceivable that at some speculative time the foot switch could have worked in the inch mode, this does not contradict his earlier statements that the press was not in that condition on the date of the accident. Moreover, Wisley's statement that "well anything is possible" does not present the type of specific fact evidence that satisfies the Rule 56(e) burden. Similarly, Westover's second statement presents no evidence disputing his earlier statement. Merely because he opined that Gregg may not have turned the key on inch mode and hit the foot switch does not dispute his prior statement that the foot switch could not activate the press while in the inch mode. Even if Westover's theory on the injury were correct, he still maintains that the switch must not have been in the inch mode for the foot switch to cause the injury.

Gregg also refers to deposition testimony and affidavits of Wilmer, Fisher and Tamny, who all acknowledged that it was possible to wire the press so that the foot switch could activate the press in inch mode and that they personally had no knowledge of whether the press operated in this fashion on the date of the accident. The inference Gregg attempts to make is too speculative to carry his burden under Rule 56(e). There is no evidence in the record to suggest that Allen-Bradley had the press rigged for the foot switch to operate in inch mode on the date of the accident and then changed it back after the accident. Even if the Wilmer-Fisher-Tamny statements created a small inference, their statements do not dispute those made by Wisley and Westover that the foot switch on Cleveland Press #18 could not activate the press while in the inch mode.

Gregg argues that the district court erroneously shifted the burden to him before Allen-Bradley satisfied its burden under Rule 56(c). First, he argues that the burden was on Allen-Bradley to establish that the foot switch could not activate the press while in the inch mode on the date of the accident. We realize that the movant's burden under Rule 56 is extremely high, but if we accepted Gregg's argument based on the facts of this case, we would be taking the Rule 56 inquiry to a new level. As we discussed above, Allen-Bradley presented sufficient evidence to show that the foot press on Cleveland Press #18 could not operate the machine while in the inch mode. There was evidence that the machine functioned in this manner on the date of the accident and no real evidence to dispute it. This was as high a burden as the district court could have placed on Allen-Bradley.

The burden was then properly shifted to Gregg under Rule 56(e). Giving Gregg's

---

1. Gregg never sought to depose Wisley and Westover. Instead, he chose to offer his counsel's affidavit summarizing statements made by both men. Gregg offers no explanations as to why he submitted the affidavit of his counsel rather than submitting the affidavit of Wisley and Westover. We find this practice generally unacceptable.

claim that the Press operated differently on the date of the accident its most liberal construction, it is no more than an allegation. Rule 56(e) requires that the adverse party come forth with specific facts. Not one of the witnesses in this case testified that the foot switch on Cleveland Press #18 operated the press while in the inch mode on the date of the accident. Moreover, no one testified that this particular press could ever operate in that manner. Evidence suggesting a mere possibility is not enough to get past the summary judgment stage.

Gregg also contends that the circumstantial evidence in this case was sufficient to defeat a motion for summary judgment. Two witnesses testified that from where they found Gregg after the accident, Gregg could not have pushed the inch button to operate the press. Gregg theorizes that this testimony indicates that the only way the press could have been activated was if he inadvertently stepped on the foot switch. There was also testimony, however, intimating that Gregg could have pushed the inch button himself. Other explanations as to how the accident occurred were also presented. We need not, however, hypothesize about how the accident occurred. The district court found that there was undisputed evidence that the foot switch could not operate the press while in the inch mode. In the absence of a dispute over that crucial fact, no triable issue remains. Allen-Bradley need not disprove every theory of how the accident could have occurred in order for it to prevail at the summary judgment stage.

For the reasons stated above, the district court's summary judgment is AFFIRMED.