GRAND TRUNK WESTERN RAILROAD COMPANY, Plaintiff,

v.

SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, D.C. Buchanan, A.R. Hicks, International Brotherhood of Boilermakers, Ship Builders, Blacksmiths, Forgers and Helpers, Charles W. Jones, J.A. Stinger, R.E. Reynolds, International Brotherhood of Firemen and Oilers, J.L. Walker, Don A. Hampton, D.S. Anderson, Transportation Communication International Union, Carmen Division, W.G. Fairchild, J.H. Grant, Jr., D.L. Jennings, Defendants.

No. 89–71454.

United States District Court, E.D. Michigan, S.D.

June 10, 1991.

Mary P. Sclawy, Grand Trunk Western R. Co., Detroit, Mich., Ronald Johnson, Randall Sarosdy, Akin Gump Strauss Hauer & Feld, Washington, D.C., for plaintiff.

Ronald Helveston, John Runyan, Sachs Nunn Kates Kadushin O'Hare Helveston & Waldman, Detroit, Mich., Michael Wolly, Gregory McGillivary, Mulholland & Hickey, Washington, D.C., for defendants.

GADOLA, District Judge.

## FACTS AND ALLEGATIONS

Defendants list thirty-four (34) disputed material facts. Defendants' response brief at 2–24. Although the court will not specifically address the materiality of each factual issue disputed by the defendant, the more prominent factual disputes will be covered below.

Grand Trunk, the plaintiff in this matter, initiated negotiations for a new collective bargaining agreement with the four defendant labor organizations on 4 April 1988. Grand Trunk had indicated that it intended to bargain on its own rather than as part of a national, multi-employer group of railroads. Between April of 1988 and 22 February 1989, plaintiff and defendants met a number of times to negotiate a new collective bargaining agreement. The four defendant unions bargained with plaintiff as a coalition.

Each union's negotiator participated with the understanding of the others that approval of his actions by his superiors in the union was a prerequisite to the consummation of an agreement. If each union agreed to any proposed bargaining agreement, the agreement would then be submitted to the members of each union for ratification consideration. At that point, "[i]f any of the groups did not ratify, then none of the agreement would apply." Barrett Dep. at 131.

Plaintiff alleges that "[a]t the end of these negotiations, the parties concluded a new agreement on February 22, 1989 ("the Agreement"), which was initialled by the General Chairmen present to signify that they had reached a meeting of the minds with Grand Trunk." Plaintiff's brief at 2. Plaintiff further alleges that

> [w]hile the [negotiates] stated they would have to run the Agreement by their international officers (with the exception of the IBF & O, which had sent an international officer to the February 22 meeting), they also stated that the international officers had already approved the basic terms of a prior February 2 draft agreement and that they expected the final Agreement, which was an improvement over the February 2 proposal for their members, to be approved.

Plaintiff's brief at 2. Plaintiff also alleges that the negotiators for the Carmen, Sheet Metal Workers International Association ("SMWIA"), and Boilermakers "indicated that they had already conferred with their international offices and were prepared to negotiate and conclude an agreement with Grand Trunk. II Bouchard Dep. at 82, 84–85, 93–95." Plaintiff's brief at 12.

At the conclusion of the 22 February 1989 bargaining session, each of the negotiators initialed the agreement. Plaintiff alleges that "[d]efendants recognize that the initialling of an agreement constitutes an acknowledgement that there is a meeting of the minds of the parties at the bargain-

ing table." Plaintiff's brief at 13. The international officers of the Carmen, SMWIA, and Boilermakers disapproved of the agreement. The plaintiff contends that the disapproval was in bad faith and made to frustrate further negotiations.

The plaintiff alleges that the international officers of the Carmen, SMWIA, and Boilermakers

insisted that negotiations be re-opened on all issues addressed in the Agreement. They objected to every essential provision of the Agreement, even ones that their own negotiators had proposed and that Grand Truck had accepted; they stated that the Agreement was unacceptable because the members of the IBF & O, with whom they had been negotiating all along as part of the coalition, would receive the same rate of pay as their members; and they demanded that Grand Truck negotiate new and complex issues that had previously been withdrawn by mutual agreement or had never been raided in the negotiations.

Plaintiff's brief at 3.

The defendants Carmen, SMWIA, and Boilermakers dispute each of these allegations. With respect to plaintiff's allegation that the negotiators expected the final agreement to be approved, defendants allege that the Carmen negotiator "stated that he did not 'recall making an opinion one way or the other' to Bouchard regarding what he expected from the Carmen's international officers. Grant Depo. 263." Defendant response brief at 7. With respect to plaintiff's allegation that the negotiators had conferred with their international offices and were prepared to conclude an agreement, defendants allege that

Neither Sheet Metal Workers negotiator Hicks nor Boilermakers negotiator Reynolds indicated to Grand Trunk prior to the February bargaining sessions "that they had already conferred with their international offices and were prepared to negotiate and conclude an agreement with Grand Trunk." (Plaintiff's brief p. 12) or "that the international officers had already reviewed and approved the February 2nd proposal (*Id.* p. 14). Both

Hicks and Reynolds specifically deny having make any statement to the carriers' negotiates to that effect. Hicks Supplemental Declaration; Reynolds Supplemental Declaration. Hicks testified that he did not tell Bouchard that he "thought it was likely that [they] would reach an agreement," only that they "could try to come to an understanding, not an agreement." By the term "understanding", Hicks meant "something to send to the International to see what they thought." Hicks Depo. 173.

Defendants' response brief at 7–8.

Defendants further contend that "[t]he plaintiff had misrepresented what the respective defendants understood the effects of initialling an agreement to be." Defendants' response brief at 8. Defendants allege that "when negotiations were completed on February 22, Grant did not feel that an agreement had been finalized, as plaintiff suggests (Plaintiff's brief p. 14); Grant felt that an agreement had been reached to forward the *tentative* agreement that had been reached on to the various international unions for their approval. Grant Depo. 260–261. Defendants' response brief at 9.

With respect to the SMWIA negotiator Hicks, the defendants allege that he

testified that he considered an initialled agreement to be of no more worth than an initialled check and that he initialled the agreement as a step in the process of obtaining the approval of his superior, Don Buchanan. In Hicks' words, if he had known the International was going to approve the agreement, "I would have signed it. Why would I have had to initial it?" Hicks Depo. 29–30, 153. Hicks testified that the union negotiators initialled the agreement because Bouchard "pressed for it all evening along (sic). We initialed the agreement so we could take it and give to the International and see what they thought and come back with whatever it was. And if there was rough spots on it, that we would negotiate again, open it up and renegotiate that part." Hicks Depo. 150. To Hicks, the initialing simply meant that he

was going to submit the document to the International union for its approval. *Id.* Defendants' response brief at 10–11.

The list of factual disputes goes on and on. The court will not and need not address the materiality of each alleged factual dispute. The factual disputes covered above, however, are sufficient for an analysis of the respective motions.

STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." [Citation omitted]. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th Ed.1979)). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving

party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. at 2511. (Citations omitted); *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

ANALYSIS

*A. The Carmen, SMWIA and Boilermaker Defendants*

■ Little analysis is necessary to dispose of the motions for summary judgment brought by the plaintiff and defendants Transportation Communications International Union, Carmen Division, W.G. Fairchild, J.H. Grant and D.L. Jennings (the "Carmen Defendants"), Sheet Metal Workers International Association, Buchanan and Hicks (the "SMWIA Defendants"), and Boilermakers, Stinger, Jones and Reynolds (the "Boilermaker Defendants"). It is

clear that with respect to these motions and cross motions for summary judgment there exist many disputed questions of material fact. The section on factual allegations, *supra*, contains examples of some of the more prominent factual disputes. Accordingly these motions and cross motion will be denied.

### B. The IBF & O Defendants

The motion for summary judgment brought by plaintiff against the International Brotherhood of Firemen and Oilers ("IBF & O"), Walker, Hampton and Anderson (the "IBF & O Defendants") and the motion for summary judgment brought by the IBF & O Defendants against the plaintiff require a different analysis and a different result. In the motion brought by the IBF & O Defendants, those defendants state that

> [t]he sole reason the IBF & O did not proceed after approving the tentative agreement was because the other unions in the bargaining coalition did not give their approvals to the agreement. IBF & O had nothing to do with those other unions' decisions. The IBF & O could do nothing further at that point but wait for its bargaining partners either to resolve their differences with the carrier or agree to move forward with the ratification process.

IBF & O Defendants' brief at 6. In response, the plaintiff agrees that "the only impediment to ratification by that union's members is the other three unions' refusal to approve the Agreement." Plaintiff's response brief at 5. The plaintiff, however, concludes that "Mr. Hampton's refusal to recommend the Agreement is based solely on extraneous considerations, *viz.* the other unions' opinion of the Agreement." *Id.*

 Apparently, plaintiff's legal argument, with respect to the IBF & O Defendants, is that bargaining with other unions as a coalition and conditioning ultimate approval on the approval of all bargaining unions, is evidence of bad faith negotiating. Not only does the plaintiff not make this argument explicitly, it does not cite any authority for such a proposition. Obvious-

ly, with respect to the IBF & O defendants there are no disputed facts. Moreover, the court finds that the plaintiff's legal theory of liability, if it has one, is insufficient. Accordingly, the IBF & O Defendants' motion will be granted and the plaintiff's motion will be denied.

SO ORDERED.