**CITY OF DETROIT, Plaintiff,**

v.

**A.W. MILLER, INC., Colonial Chemical, Absorbent Sales, Inc., Raymond Industries & Equipment Sales, Inc., American Mechanics, Inc., World Computer Works, Wald Co. d/b/a Maintenance Coating, Inc., Mar–Vel Sheet Metal, Inc., M & L Auto Sales, Inc., Diamond Chemical Co., Conner Welding, Inc., Duall–Sorber Products Co., and Detroit Flat Polishing (Division of Inland Steel), jointly and severally, Defendants.**

No. 93–72939.

United States District Court,
E.D. Michigan, S.D.

Jan. 28, 1994.

Richard D. Connors, Carrie G. Barrett, Plunkett & Cooney, Detroit, MI, for plaintiff.

Thomas M. Fallucca, Glenn R. Matecun, Ufer, Spaniola, Bloomfield Hills, MI, for A.W. Miller Inc.

Saulius K. Mikalonis, Sommers, Schwartz, Silver & Schwartz, P.C., Southfield, MI, for Colonial Chem.

Timothy J. Lozen, Freeman McKenzie, Mount Clemens, MI, for Wald Company.

David M. Caplan, Southfield, MI, for Mar–Vel Sheet Metal, Inc.

Stanley M. Weingarden, Partovich & Weingarden, Farmington Hills, MI, for M and L Auto Sales, Inc., Conner Welding Inc.

Eric A. Linden, Jaffe, Raitt, Heuer & Weiss, P.C., Arthur H. Siegal, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Diamond Chemical Co.

John G. Gleeson, Laura A. Talt, Howard & Howard, Bloomfield Hills, MI, for Detroit Flat Polishing.

## OPINION & ORDER DENYING DEFENDANT DIAMOND CHEMICAL'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On July 28, 1993, plaintiff filed its first amended complaint against defendants pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675. Plaintiff seeks contribution for environmental cleanup costs under CERCLA, allegedly incurred after a specific piece of property was acquired by plaintiff under the power of eminent domain.[1] On October 6, 1993, defendant Diamond Chemical Company ("Diamond") filed the instant motion for summary judgment. Plaintiff filed a response November 23, 1993. Diamond filed a reply December 9, 1993. The hearing on this matter was canceled pursuant to Local Rule 7.1(e)(2) (E.D.Mich. Jan. 1, 1992). The court has not yet issued a scheduling order in this case. Thus, discovery remains open.

### I. Facts

This action arises out of the ownership of a parcel of property located at 2531–2569 Conner, 2501–2600 Conner, and 12301–12383 East Vernor in Detroit, Michigan ("Parcel 798"). Plaintiff City of Detroit acquired the property through condemnation and now seeks contribution for costs incurred in conducting an environmental cleanup of Parcel 798.

On May 18, 1987, plaintiff filed a complaint in Wayne County Circuit Court seeking condemnation of certain real property owned by A.W. Miller, Inc. ("Miller") and leased from Miller by various parties including Diamond. On May 19, 1989, a consent judgment was entered between plaintiff and Miller which called for plaintiff to pay Miller $1,115,000.00 as compensation for Miller's ownership interest in the real property. On April 20, 1989, in consideration of Diamond's leasehold interest in the property, a consent judgment was entered between plaintiff and Diamond whereby plaintiff agreed to pay Diamond $45,063.00.

Following the entry of the consent judgments, plaintiff conducted environmental site investigations. Plaintiff discovered that hazardous substances as defined in CERCLA had been stored on the property and that the underground storage tanks had leaked. Plaintiff undertook remedial actions which included the removal of the underground storage tanks. Plaintiff alleges that the remedial cleanup amounted to response costs of $635,104. In addition, plaintiff contends that the Michigan Department of Natural Resources required the construction of a clay cap and French drain system at a cost of $4,114,975.

Diamond is in the business of manufacturing laundry supply products. In 1987, when the property was condemned by plaintiff, Diamond was a tenant of Miller, leasing Building 6A on Parcel 798 for use as a warehouse and as office space. Diamond stored certain laundry supplies in Building 6A, such as bleaches, detergents, starches, and fabric softeners, prior to shipping them to customers. According to its pleadings, Diamond did not manufacture any products in Building 6A but it did "repackage" a dilute bleach solution from "large loads" to "smaller containers for sale." Diamond claims that it's control over and use of Parcel 798 as a whole was limited to Building 6A and the common areas of the property such as the roads and parking areas.

### II. Standard of Review for Motion for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be

---

**1.** This court dismissed plaintiff's pendent state law claims. The CERCLA claim is the only remaining issue.

granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Analysis

■ To make out a *prima facie* case in a private-party suit under CERCLA, the plaintiff must allege four elements:

1. That the defendant falls within one of the four categories of "covered persons" as defined in 42 U.S.C. § 9607(a);

2. That there was a release or a threatened release of a hazardous substance from defendant's facility;

3. That the release or threatened release caused the plaintiff to incur response costs; and

4. That the plaintiff's costs were necessary costs of response consistent with the national contingency plan.

*Dedham Water Co. v. Cumberland Farms Dairy*, 889 F.2d 1146, 1150 (1st Cir.1989). Those who may be held liable as "covered persons," as defined in 42 U.S.C. § 9607(a), are (1) current owners and operators of a

facility, (2) former owners and operators of a facility who owned or operated the facility at the time of disposal of hazardous substances at such facility, (3) owners and/or possessors of the hazardous waste itself who arrange for its transport, disposal or treatment, and (4) those who transport hazardous waste. *See id.* at 1151.

Plaintiff alleges the first of the four elements listed above by stating the following:

> While **Diamond Chemical Co., Inc.** owned, operated and/or leased the Parcel, there were underground storage tanks on the Parcel and the Parcel may have been contaminated with, among other things, polynuclear aromatic compounds (PNA's) and hazardous substances as a consequence. In addition, it is believed that **Diamond Chemical Co., Inc.** warehoused laundry supplies including flammable liquids, soaps and detergents which may have contaminated the Parcel as a consequence.

First Amended Complaint, Paragraph 57 (emphasis in original). From these allegations, it appears that plaintiff is claiming that defendant incurred liability under the second and third categories of covered persons (former operator at time of release and owner/possessor of hazardous substance who arranged disposal), 42 U.S.C. § 9607(a)(2)–(3).

In paragraphs 71, 72, and 73 of the First Amended Complaint, plaintiff alleges elements two, three and four, respectively, of its CERCLA claim.

### A. Diamond's Claim of Improper Collateral Attack on Judgment and Res Judicata

Diamond argues several grounds for summary judgment which can be categorized into two groups. The first group consists of Diamond's claims that plaintiff's action for environmental cleanup costs is an improper collateral attack on the consent decree and that plaintiff's claim is barred by the doctrine of *res judicata.* These arguments are the same arguments brought by defendant Miller in its September 10, 1993 motion to dismiss.

The language of the Miller consent judgment with respect to its preclusive effect on other claims, is the same as the language that appears in the Diamond consent judgment. Therefore, as to these arguments of Diamond, the court refers the parties to its January 4, 1994 order denying Miller's motion to dismiss (converted by the court to a motion for summary judgment). For the same reasons set forth in its January 4, 1994 opinion denying Miller's motion to dismiss, the court rejects Diamond's arguments that plaintiff's complaint is an improper collateral attack and that plaintiff's claim is barred by the doctrine of *res judicata.*

### B. Diamond's Other Defenses

■ Diamond's second set of arguments addresses various technical provisions of CERCLA which Diamond claims operate either to bar plaintiff's claims or as a defense to those claims.

### 1. Diamond Claims It Was Not an Owner or Operator of a Facility at Which a Release Was Discovered

Diamond misconstrues plaintiff's complaint as making a claim under 42 U.S.C. § 9607(a)(1) that Diamond is liable as a present owner/operator of the facility. Section 9607(a)(1) "unequivocally imposes strict liability on the current owner from which there is a release or a threat of release, without regard to causation." *State of N.Y. v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir. 1985). Plaintiff states that it "does not contest that Diamond is not the current owner or operator of the facility." Plaintiff's Response at 9. However, whether Diamond is liable under 9607(a)(1) is not an issue raised by plaintiff's complaint.

### 2. Diamond Claims It Was Not the Owner or Operator of a Facility at the Time of Disposal

Section 9607(a)(2) imposes liability on those persons who owned and operated the facility at the time the hazardous substances were disposed of at the facility. *Sunnen Prod. Co. v. Chemtech Indus., Inc.,* 658 F.Supp. 276, 278 (E.D.Mo.1987). Diamond makes the bald assertion that "[c]learly, Diamond does not fall within that category." Brief at 11. Diamond does not deny that it previously was an operator of the facility. The only question is whether Diamond was

an operator of the facility at the time hazardous substances were dispensed onto the premises; this is a question of fact on which only limited discovery has been taken.

■ Summary judgment is appropriate only where there has been adequate time for discovery. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Plaintiff claims that it has not had adequate time for discovery on the issues raised by defendant's motion for summary judgment. There having been no scheduling order issued and therefore no discovery dates set, this court finds that summary judgment would be inappropriate at this time.

### 3. Diamond Claims It Did Not Arrange for Disposal of Any Hazardous Substances

Section 9607(a)(3) imposes liability on a party that owned or possessed hazardous waste and arranged for its disposal. 42 U.S.C. § 9607(a)(3). Liability under this section generally is found only where a defendant has had some actual involvement in the decision to dispose of waste. *See General Elec. Co. v. AAMCO Transmissions, Inc.,* 962 F.2d 281, 286 (2d Cir.1992) ("almost all courts that have held defendants liable have found that the defendant had some actual involvement in the decision to dispose of waste"). Thus, the issue raised by the complaint is whether Diamond was actually involved in the decision to dispose of any of the hazardous waste found on the premises by plaintiff; this is a question of fact. Again, without there having been adequate time for discovery on this issue, the court cannot make a determination as to whether there exist genuine issues of fact for trial.

### 4. Diamond Claims that Plaintiff Failed to Comply with the NCP

The fourth element of a private-party CERCLA claim is that the costs sought to be recovered must have been consistent with the National Contingency Plan ("NCP"). 42

U.S.C. § 9607(a). The NCP, found at 40 C.F.R. § 300.1 *et seq.,* consists of a series of regulations promulgated by the EPA to establish procedures, criteria and responsibilities for response actions conducted both by the government and private parties. The NCP is designed to assure that response actions are both cost-effective and environmentally sound. *Reading Co. v. City of Philadelphia,* 823 F.Supp. 1218, 1239 (E.D.Pa. 1993).

■ It response action will be consistent with the NCP if the action, when evaluated as a whole, is in substantial compliance with the listed applicable requirements and results in a "CERCLA-quality cleanup." 40 C.F.R. § 300.700(c)(3)(i). The EPA has defined a CERCLA-quality cleanup as a cleanup that satisfies the three basic remedy selection requirements of 42 U.S.C. § 9621(b)(1). 55 Fed.Reg. 8793 (March 8, 1990).[2] Namely, that (1) a cleanup is protective of human health and the environment, utilizes permanent solutions and alternative treatment technologies to the maximum extent practicable, and is cost-effective; (2) the cleanup attains all applicable or relevant and appropriate requirements ("ARAR"s); and (3) the cleanup provides meaningful public participation. *Id.* In private recovery actions, it is the plaintiff's burden to establish that its costs were consistent with the NCP. *Amland Properties Corp. v. Alcoa,* 711 F.Supp. 784, 794 (D.N.J.1989).

Diamond discusses at length the law on the issue of compliance with the NCP. Diamond's discussion of how plaintiff's compliance with the NCP is deficient, however, is sketchy. The court discerns in the pleadings five allegations of deficiencies. First, Diamond alleges that plaintiff failed to document during all phases of the response that its actions were taken in compliance with the NCP, as required by sections 300.160 and

**2.** Until the EPA issued this regulation in 1990, there was an ongoing dispute over whether to require strict or substantial compliance with the NCP. *See e.g. Channel Master Satellite Sys., Inc. v. JFD Electronics Corp.,* 748 F.Supp. 373, 382–84 (E.D.N.C.1990); *Amland Properties Corp. v. Alcoa,* 711 F.Supp. 784, 795 (D.N.J.1989). The effective date of the regulation is April 9, 1990.

Because the date of completion of the remedial action is unclear, the court has some question as to whether the strict or substantial compliance standard applies to this case. However, both parties to the motion cite the "substantial compliance" standard as that which is applicable; the court therefore applies this standard.

300.315. Brief at 14. Second, Diamond claims that plaintiff's "files reflect a failure to identify ARARs as required by section 300.-400(g).[3] Brief at 15. Third, Diamond claims that plaintiff failed to notify the National Response Center as required by section 300.-405. Fourth, Diamond claims that plaintiff's remedial investigation did not include a site assessment as required by section 300.-430(d)(2). Brief at 17. Finally, Diamond claims that plaintiff's "files reflect no evidence of its having provided notice or an opportunity for public comment concerning its selection of a response action at Parcel 798." Brief at 18.

Plaintiff, on the other hand, claims that it has "satisfied all of the NCP's requirements." Response at 11–12. In response to Diamond's first allegation, plaintiff points to **Exhibit I** (Preliminary Parcel Assessment Report for Parcel 798, dated May 1988), **Exhibit J** (Field Sampling and Analytical Results for Parcel 798, dated August 20, 1988), **Exhibit L** (Remedial Investigation Plan for Parcel 798, dated October 7, 1988 and revised January 27, 1989), and **Exhibit 4** (Remedial Action Plan for Parcel 798, dated March 1989), to demonstrate that the plaintiff did document its compliance with the NCP during all phases of the response. After reviewing these documents, the court is satisfied that, at the very least, there remains a genuine issue of material fact as to whether plaintiff properly documented its compliance with the NCP during all phases of the response.

In response to Diamond's second allegation, plaintiff points to Exhibit L, page 1, where it is stated that the Remedial Investigation Plan considered such things as the effect on drinking water, human exposure to contaminants, prevention of off-site releases, and compliance with State and Federal requirements. This document sufficiently undermines Diamond's claim that there is no genuine issue of material fact as to whether plaintiff complied with the NCP in this regard.

With respect to Diamond's claim that plaintiff failed to notify the National Re-

sponse Center, plaintiff points out that section 300.405 applies only where there was a release of a hazardous substance equal to or exceeding the reportable quantity set forth in 40 C.F.R. Part 302 within a 24–hour period. Because there was no such release, plaintiff had no obligation to make a report to the National Response Center.

Plaintiff claims that the requirement of developing a Remedial Investigation Plan and Feasibility Study ("RI/FS") set forth in section 300.405 was met by the collective body of the documents listed above and presented here as exhibits, and by the documents prepared for and approved by the "reviewing agencies," including the Draft Environmental Impact Statement and the Final Environmental Impact Statement. Response at 13. The purpose of the RI/FS requirement is to ensure that the plan arrived at by a plaintiff was appropriate and cost-effective. In light of the extensive documentation presented by plaintiff and without a specific allegation from Diamond as to how the plan developed by the plaintiff was not cost-effective or appropriate, the court cannot find that plaintiff will not be able satisfy its burden with respect to the requirements of section 300.405.

As to Diamond's allegation that no public comment was allowed for, plaintiff presents evidence that it did indeed provide for public involvement in all aspects of the remediation project. Exhibit 5 of the Response contains City Newsletters inviting the public to write or attend meetings to raise their concerns or objections. Exhibit 5 also includes comments from concerned citizens which were addressed and incorporated in the Final Environmental Impact Statement. Notice of the availability of the Environmental Impact Statement was published in the Federal Register in December 1986. And, in January 1987, the Detroit Free Press published notice that the environmental review record was on file at the City Planning Department and available to the public.

As set forth *supra*, a moving party has the burden of pointing out to the court that no

---

**3.** Specifically, Diamond claims that plaintiff did not conduct a Feasibility Study, failed to develop or analyze remedial alternatives, and failed to

consider overall protection of human health and the environment. Brief at 17. **Vanessa—Check ARARs regulation to see that these are ARARs.**

issue of material fact exists with regard to the issue on which summary judgment is sought. In this case, the court finds that Diamond has failed to carry its burden. In fact, Diamond's motion tends to demonstrate that at the very least, there are genuine issues of material fact as to whether plaintiff has complied with the NCP.

### 5. Diamond Claims It is Excluded from Liability under CERCLA's Third–Party Defense

■ Diamond claims that even if it can be deemed to have been an operator of the facility at the time hazardous waste was released at the facility, section 9607(b)(3) provides Diamond with a viable defense. Subsection (b) sets forth the defenses that a defendant may assert against the otherwise strict liability of section 9607(a). Under subsection (b)(3), a defendant can defeat liability by demonstrating (1) that a third party was the sole cause of the release or threatened release of a hazardous substance; (2) that the act or omission of the third party causing the release did not occur in the context of a direct or indirect contractual relationship between the defendant and the third party; and (3) that the defendant took due care and precautions to prevent the foreseeable acts or omissions of the third party causing the release or threatened release. *Id.*

Diamond makes the bald assertion that "[i]n this case, the release of any hazardous substance and the resulting damages were caused solely by and act or omission of third persons." Brief at 18. Diamond's argument essentially is that because Diamond denies releasing any hazardous substance, Diamond is entitled to the third party defense of subsection (b)(3); Diamond's logic: if it wasn't Diamond, it must have been a third party. Diamond also argues that because its only contractual relationship with respect to Parcel 798 was with Miller, and because Miller also denies releasing any hazardous waste, Diamond cannot be contractually linked to hazardous waste disposal. Brief at 19. Diamond's pleadings are conclusory. These issues all involve questions of fact on which discovery is needed. Since discovery is open

and on-going, the court is not in a position to make a definitive ruling on these issues.

### 6. Diamond Claims Plaintiff's Action is Barred Because Plaintiff Failed to Provide Prior Notice as Required By CERCLA

■ Diamond claims that plaintiff's claim is barred because plaintiff failed to give defendant notice that it was "in violation of any standard, regulation, condition, requirement or order," as required by 42 U.S.C. § 9659. Plaintiff's complaint is not alleging that Diamond presently is in violation of any environmental standard, regulation, condition, requirement or order. Rather, plaintiff is seeking contribution for clean-up costs under 42 U.S.C. § 9613(f). Subsection (d) of section 9659 makes clear that the notice provisions Diamond argues are applicable here, apply only to actions brought under subsection 9659(a).

### 7. Diamond Claims Plaintiff's Claim is Time–Barred

■ Diamond cites CERCLA's statute of limitations as being three years from the date a removal action is completed. As plaintiff points out, this is incorrect.[4] Section 9613(g)(2) provides the statutory limitation for actions for recovery of costs of removal actions and remedial actions. That section provides as follows:

Actions for recovery of costs. An initial action for recovery of the costs referred to in section [42 U.S.C. § 9607] must be commenced—

(A) for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under [42 U.S.C. § 9604(c)(1)(C) ] for continued response action; and

(B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, *except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the*

---

4. 42 U.S.C. § 9613(g)(1) does provide a three-year statute of limitations for actions for natural resource damages. However, plaintiff is not seeking natural resource damages.

*removal action may be recovered in the cost recovery action brought under this subparagraph.*

*Id.* (emphasis added). In the instant action, plaintiff seeks recovery of both removal costs and remedial costs. Complaint at Paragraph 72. Plaintiff claims that the remedial action was not completed until 1990. Thus, under section 9613(g)(2)(B), plaintiff had until sometime in 1996 to file an action for recovery of both the removal and remedial actions.

## IV. Conclusion

For all of the foregoing reasons, the court shall deny Diamond's motion for summary judgment. As to the first group of arguments raised by Diamond, the denial is final and with prejudice to Diamond's right to revisit those issues. As to the second group of arguments, the denial shall be without prejudice to either party's rights to move for summary judgment when either discovery has closed or when the parties agree that sufficient discovery has been taken.

### *ORDER*

Therefore, it is hereby **ORDERED** that defendant Diamond Chemical Company's motion for summary judgment is **DENIED** without prejudice to Diamond's right to bring a second motion for summary judgment on the second group of issues (discussed herein at section III(B)) at such time as discovery has closed or the parties agree that sufficient discovery has been taken.

**SO ORDERED.**