**Robert E. HORRINGTON, Plaintiff,**

v.

**CITY OF DETROIT, Police Officer Patrick Jones, and Police Officer Tonya Leonard, Defendant.**

**No. Civ. 98–40337.**

United States District Court,
E.D. Michigan,
Southern Division.

May 6, 1999.

Thomas E. Kuhn, Williams & Youngblood, Detroit, MI, for Robert Horrington, plaintiff.

Leslie D. Cooper, Detroit City Law Department, Detroit, MI, for defendant.

## *MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT CITY OF DETROIT'S MOTION FOR SUMMARY JUDGMENT*

GADOLA, District Judge.

Presently before the Court is defendant City of Detroit's motion for summary judgment filed February 19, 1999. Plaintiff Robert E. Horrington brings this § 1983 action against defendant city and two police officers following an incident which occurred on July 27, 1997 in which plaintiff was subjected to pepper spray, arrested, handcuffed and placed in a police car for transport to police headquarters. Plaintiff responded to defendant's motion on April 2, 1999. No reply brief has been submitted. Oral argument on defendant's motion was heard on April 21, 1999.

For the reasons set forth below, the Court will grant City of Detroit's motion for summary judgment.

## I. Factual Background

On July 27, 1997, plaintiff traveled to Belle Isle, a city park, to attend a wedding. He was accompanied by his friend, Ms. Anita Gordon. Upon leaving the island, plaintiff encountered a "huge traffic jam," whereupon he and Ms. Gordon allegedly observed several African–American males going from car to car in an apparent attempt to hold up the people caught in the traffic jam.

Plaintiff claims that he then called 911 to report the apparent robberies, but instead of reaching the Detroit police department as he expected, plaintiff reached Windsor, Canada dispatch. Plaintiff maintains that Windsor dispatch told him to keep trying and that maybe he would get through to the Detroit police. *See* Horrington Depo., Exh. 1 to plaintiff's response, pp. 56–57. Plaintiff then drove across a grassy area and then the wrong way on a one-way street.

The parties are in dispute as to exactly what transpired next. Defendant city claims that no other vehicles were driving on the grass or the wrong way on a one-way street. According to defendant, plaintiff parked his car and walked over to a nearby police car yelling. Defendant further alleges that plaintiff became louder and ruder and when the officers attempted to drive away toward the location of the traffic problems, plaintiff grabbed the driver's side door of the police car.

On the other hand, plaintiff maintains that when he noticed the police car parked nearby another citizen was speaking to the officers and making some sort of complaint. Plaintiff then allegedly waited his turn and approached the officers, telling them that it appeared a "hold up" was in progress. According to plaintiff, the officers were "non-responsive" and refused to call a supervisor. Plaintiff then walked away and admits to stating that "part of the problem was that the officers were not doing their job."

The officers' version of events, however, is very different. They claim that plaintiff responded with threats, name-calling and profanity. A crowd began to form, plaintiff allegedly got louder, and the police purportedly warned plaintiff that he was subject to arrest. When Officer Jones decided to inform plaintiff he was under arrest for disorderly conduct, plaintiff proceeded to walk away and enter his vehicle through the open driver's side door. He refused to exit the car. Both officers tried to subdue plaintiff as he was pulling away, kicking and resisting. Plaintiff was then subjected to pepper spray, arrested, and placed in the police car. Plaintiff was taken to the Seventh Precinct where defendants claim no injury was observed. Plaintiff was later released.

Plaintiff alleges that when defendant Jones demanded that plaintiff get out of the car, Jones grabbed plaintiff and tried pulling him from the car, whereupon defendant Leonard sprayed both plaintiff and Ms. Gordon with a chemical agent. After plaintiff was face down on the grass and handcuffed, plaintiff further contends that one of the officers sprayed him again in the face with the chemical agent. According to plaintiff, he complained about the handcuffs being too tight. Rather than loosening the handcuffs, the officers allegedly proceeded to the police station accelerating and then slamming on the brakes.[1]

## II. Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). In evaluating a motion for summary judgment, the Court must view the evidence in a light most favorable to the nonmovant, as well as draw all reasonable inferences in the nonmovant's favor. *See U.S. v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed. R.Civ.Proc. 56(e); *Gregg*, 801 F.2d at 861.

1. Plaintiff Horrington is a 47 year old African–American, who is a former City of Detroit police officer. Plaintiff has had two prior excessive force claims against the department. According to plaintiff, both prior claims involved scenarios similar to the one presented in the case at bar. In all three situations, plaintiff vocally expressed his displeasure at the conduct of the police officers.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,*

> [t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## II. Analysis

■ Defendant City of Detroit argues that in order to hold a city liable for a civil rights violation pursuant to 42 U.S.C. § 1983, plaintiff must prove that a constitutional injury was caused by action taken "pursuant to official municipal policy of some nature." *See Monell v. New York City Dept. of Social Svs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The mere occurrence of a constitutional violation by an officer of a municipality is insufficient to show the existence of a municipal *policy* underlying the violation. *Oklahoma v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). With respect to cases involving failure to train officers, defendant city directs the Court's attention to *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), in which the Supreme Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388, 109 S.Ct. 1197.

Plaintiff maintains that he is able to demonstrate a custom, policy or practice of the City of Detroit which tolerates the unconstitutional use of chemical spray. According to plaintiff, defendant city has a practice of providing no supervision, no oversight and no discipline for the use of spray. Plaintiff further alleges that when reviewing the use of spray by its officers, defendant city has a policy of never questioning the person subjected to the spray and supervisors customarily do not talk with officers about the use of spray.

The crucial issue which must be addressed is whether there exists a genuine issue of material fact as to defendant City of Detroit's policy regarding the use of chemical spray by its officers. In other words, construing the evidence in the light most favorable to plaintiff as the non-movant, the question is whether the municipality was "deliberately indifferent" to a substantial risk of serious harm. *See Canton,* 489 U.S. at 388, 109 S.Ct. 1197.

In *Canton,* the plaintiff brought a § 1983 claim against the city resulting from its failure to provide her with medical care while in custody. *See* 489 U.S. at 381, 109 S.Ct. 1197. In addressing plaintiff's claim, the Supreme Court reaffirmed its prior pronouncement in *Monell, supra,* that "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *Canton,* 489 U.S. at 385, 109 S.Ct. 1197 (citing *Monell,* 436 U.S. at 694–95, 98 S.Ct. 2018).

■ The first inquiry "in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." In *Canton,* the Court held that such a direct causal link could be found where the city fails to adequately train its officers. However, a city's liability for "failure to train" is not automatic and must be deter-

mined by considering the following factors, as articulated by Justice White:

> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition in *Monell,* 436 U.S., at 694, 98 S.Ct., at 2037, and *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981), that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. As Justice BRENNAN's opinion in *Pembaur v. Cincinnati,* 475 U.S. 469, 483–484, 106 S.Ct. 1292, 1300–1301, 89 L.Ed.2d 452 (1986) (plurality) put it: "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. *See also Oklahoma City v. Tuttle,* 471 U.S., at 823, 105 S.Ct., at 2436 (opinion of REHNQUIST, J.). Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983.

*Canton,* 489 U.S. at 388–89, 109 S.Ct. 1197 (footnotes omitted).

In defining the term "deliberate indifference" in the context of municipal liability under § 1983 the *Canton* Court further stated that "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."

*Id.* at 390, 109 S.Ct. 1197. In a separate concurring opinion, Justice O'Connor "agreed with the Court's 'obvious[ness]' test and observed that liability is appropriate when policymakers are 'on actual or constructive notice' of the need to train." *Farmer v. Brennan,* 511 U.S. 825, 841, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Canton,* 489 U.S. at 396, 109 S.Ct. 1197). The Supreme Court has referred to the "deliberate indifference" requirement articulated in *Canton* as an "objective" test. *Id.* at 841, 114 S.Ct. 1970.

Plaintiff relies principally upon cases involving suits by inmates against prison officials holding that "deliberate indifference" may be shown through circumstantial evidence. *See Farmer v. Brennan,* 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In *Farmer,* a case involving a transsexual prisoner who claimed that prison officials showed "deliberate indifference" in violation of the Eighth Amendment by placing him in the general prison population, the Supreme Court stated that

> [w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Id.* Plaintiff further argues that the failure to administer censure and punishment for officers' improper behavior can serve to establish the existence of an unstated policy of official acquiescence. *See Marchese v. Lucas,* 758 F.2d 181 (1985). Moreover, plaintiff maintains that a city may be liable where the "deliberate indifference" was committed in a supervisory function and the failure was to oversee and supervise properly. *See Taylor v. Michigan Dept. of Corrections,* 69 F.3d 76 (6th Cir.1995).

At the hearing held April 21, 1999, plaintiff clarified his position by stating that he is not basing his claim of "deliberate indifference" on the city's failure to train but

rather on the city's alleged failure to supervise and discipline officers who have improperly utilized the chemical spray. This failure, according to plaintiff, is supported by deposition testimony.

▪ Specifically, plaintiff alleges that defendant city has a policy (i.e., custom or practice) of never questioning persons subjected to the spray and that supervisors customarily do not speak with officers about the use of the spray. *See* Depo. of Deputy Chief Walter Shoulders, Exh. 9 to plaintiff's response, pp. 21–22, 25, 27–28; *see also* Depo. of Lieutenant Mildred Jackson, Exh. 11 to plaintiff's response, pp. 12 & 15. Plaintiff also maintains that none of the city officials deposed could recall any disciplinary action taken against an officer for on-duty use of spray. *See, e.g.,* Depo. of Inspector Krystal Harris, Exh. 10 to plaintiff's response, p. 9; Depo. of Deputy Chief Walter Shoulders, Exh. 9, pp. 39–40.

Defendant City of Detroit at the hearing also raised additional points in opposition to plaintiff's charge of "deliberate indifference." Most persuasively, defendant pointed out that in the case at bar plaintiff Horrington failed to file a citizen's complaint with the police department alleging injuries as a result of the application of the chemical spray. Such a complaint, according to defendant, would have automatically sparked an investigation, requiring interviews with plaintiff and plaintiff's friend, Ms. Gordon. If such a complaint were filed, then the city would have engaged in the oversight, supervision, and potential disciplinary action which plaintiff now claims is lacking.

Defendant also argued that the record, instead of buttressing plaintiff's claim of "deliberate indifference," supports just the opposite conclusion. Officers are required to attend training regarding the use of chemical spray. Furthermore, officers are required to report the use of the spray on a form entitled, "Use of Chemical Spray Device," which is reviewed by supervisors. *See* Exh. 4 to plaintiff's response. In addition, defendant maintained that the forms regarding the use of chemical spray are for statistical purposes and are not usually used as the basis for disciplinary action. Such action is usually reserved for cases where a citizen's complaint has been filed.

In light of the above, this Court finds that defendant city has satisfied its burden of demonstrating the absence of a genuine issue of material fact as to whether the municipality was "deliberately indifferent" to a substantial risk of serious harm. *See Gregg*, 801 F.2d at 861. The burden is therefore shifted to plaintiff, as the non-moving party, to set forth specific facts showing a genuine triable issue. Fed. R.Civ.Proc. 56(e); *Gregg*, 801 F.2d at 861.

In attempting to meet this shifted burden, plaintiff is able to present deposition testimony to the effect that supervisors do not customarily speak to persons subjected to the spray nor oftentimes with the officers themselves about the use of the spray in a particular instance. The question is whether these facts, if taken as true and construed in the light most favorable to plaintiff, are sufficient to establish a genuine issue of material fact as to the city's deliberate indifference. The Court finds that these facts do not raise a genuine issue for the following reasons.

▪ As previously discussed, pursuant to the Supreme Court's ruling in *Canton*, " 'municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *Canton*, 489 U.S. at 389, 109 S.Ct. 1197 (citing *Tuttle*, 471 U.S. at 823, 105 S.Ct. 2427). Plaintiff has failed to show any "deliberate" or "conscious" choice by defendant municipality evincing any policy of "deliberate indifference" with respect to the application of chemical spray. To the contrary, it appears that defendant municipality has provided its officers with training and some measure of supervision with respect to the application of chemical spray.

Moreover, as *Canton* makes clear, there must be "a direct causal link" between the

alleged municipal policy or custom and the alleged constitutional deprivation. In the instant case, plaintiff has relinquished his claim premised on the failure to train, and relies solely upon the city's failure to supervise its officers. However, plaintiff has not demonstrated any causal connection between the alleged failure to supervise and any constitutional violation.

The Court further notes that plaintiff's position is undermined by his failure to file a citizen's complaint with the police department. This Court is hard pressed to conclude that plaintiff has raised a genuine issue that the city was "deliberately indifferent" when, as the record indicates, plaintiff did nothing following the incident to apprise the officers' supervisors and/or others in the department of the alleged severity of his injuries. Furthermore, plaintiff has come forward with nothing more than his own deposition testimony to substantiate his allegation that he suffered severe injuries as a direct result of the application of chemical spray.

Accordingly, the Court will grant defendant City of Detroit's motion for summary judgment.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendant City of Detroit's Motion for summary judgment is **GRANTED.**

**SO ORDERED.**