Ricky A. WHITE, Plaintiff,

v.

CITY OF TAYLOR, R. Harmon, R. Clewett, Officer Blanchard, jointly and severally, Defendants.

Civ. A. No. 93–71933.

United States District Court, E.D. Michigan, S.D.

April 14, 1994.

Margaret T. Debler, Johnson, Rosati, Galica, Shifman, LaBarge, Farmington Hills, MI, for defendants.

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On December 6, 1993, defendants filed the instant motion for summary judgment. Plaintiff filed a reply December 28, 1993. On February 17, 1994, defendants filed a reply. Discovery closed in this case November 19, 1993. Oral argument was heard April 6, 1994.

## I. Facts

At approximately 7:30 a.m., April 30, 1991, plaintiff was arrested by defendants on a charge of Unlawfully Driving Away an Automobile.[1] According to the police reports submitted by defendants in support of their motion for summary judgment, at 5:30 a.m. on April 30, 1991, Officers Mize and Blanchard were on Brest Road investigating two abandoned vehicles they believed had been stolen when they saw other two vehicles: one, a blue Firebird driven by plaintiff, and the other a black GM pickup truck driven by plaintiff's friend Isaac Rickles. The officers became suspicious when they observed the vehicles repeatedly starting toward them and then stopping.[2]

The officers split up: Officer Blanchard pulled over Rickles and, after learning that he was driving with a suspended license, arrested him; Officer Mize followed plaintiff and saw him pull into a driveway. Plaintiff exited the Firebird and knocked on the door of the house. Plaintiff then went around the side of the house and jumped a fence. Mize checked the car plaintiff had been driving; he found that the car had steering column damage and that the engine was running without keys in the ignition. Officer Mize then radioed for assistance, indicating over the radio that plaintiff was suspected of driving a stolen vehicle.

Responding to Officer Mize's radio transmission, a third officer, Officer Harmon, began searching for plaintiff. Upon arriving at the area where plaintiff reportedly was, Harmon spotted plaintiff running into the woods. Harmon shouted at plaintiff from a distance of 25 or 30 feet to halt; plaintiff turned and looked at Harmon and then ran faster in the

---

1. What occurred on the evening prior to plaintiff's arrest is a matter of dispute between the parties. Defendants claim that plaintiff stole a car, although the charge against him was dismissed when defendants failed to produce certain witnesses. Plaintiff claims that the car was stolen by his friend, Isaac Rickles, without his assistance or knowledge. Although what happened the night before does not appear to the court to be relevant to the issues raised by plaintiff's complaint, the court will assume for purposes of this motion that plaintiff's version of the facts is true and accurate.

2. The officers suspected that the area was a drop-off point for stolen vehicles. They believed the two stolen vehicles they were investigating had been dropped off within the last twenty minutes. They therefore thought it possible that plaintiff and Rickles were in the area to drop off another stolen vehicle.

other direction. Harmon chased plaintiff with the patrol car for some time before finally finding him in a field, tackling him and handcuffing him. As Mize caught plaintiff, Officer Blanchard arrived at the scene.

After handcuffing plaintiff, Officers Harmon and Blanchard began dragging plaintiff to the police car. They had dragged him about 50 yards to a location near the patrol car, when they decided to wait there until the police dog had finished its track of plaintiff. After the dog had arrived, plaintiff was lifted to his feet by Officers Mize and Blanchard. As plaintiff attained a standing position, the dog grabbed hold of his right elbow and began pulling on it with his teeth. Officer Clewett told the dog to heel and it responded. Officer Harmon examined plaintiff's arm and saw that it was injured and bleeding. Plaintiff was then transported to the hospital for medical treatment.

At his deposition, Officer Clewett testified that the City of Taylor provided him with no formal training in the handling of police dogs other than to hand him some written policies. He further testified that he is not aware of any policy of the City of Taylor that requires any prisoner injuries to be reported or investigated, including injuries caused by the police dogs. Finally, Officer Clewett testified that he knows of only two incidents of police dog bites in the City of Taylor: those are plaintiff's injury and one other. Both bites were incurred by the same dog (a dog named Beau) while it was under the supervision of Officer Clewett.

On March 11, 1993, plaintiff filed a complaint in Wayne County Circuit Court alleging state and federal law claims. Defendants removed the action to this court on May 6, 1993. Exercising its discretion to retain or remand pendent claims, the court remanded Counts I and III which allege only state law claims and retained Counts II and IV which allege, respectively, a claim under 42 U.S.C. § 1983 and a claim for exemplary damages.

In Count II, plaintiff alleges that defendants violated his constitutional right to be free from unreasonable search and seizure, the right to be free of excessive force, and the right to due process.[3] Specifically, plaintiff alleges that

> [d]efendant's [sic] permitted a police dog to bite Plaintiff on his right elbow at a time when Plaintiff was handcuffed [and that] [t]he conduct of allowing Plaintiff to be bitten by a police dog at a time when Plaintiff was completely subdued and in the complete control of the officers was grossly negligent.

Complaint at Para. 12 and 14.

Defendants bring their motion for summary judgment under Fed.R.Civ.P. 56, claiming that plaintiff has no evidence to support his section 1983 claim.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

---

**3.** Although it is unclear from the complaint, it may be that plaintiff has included both the Fourth Amendment search and seizure claim and the due process claim as part of his excessive force claim. The court nevertheless addresses the issue of probable cause in subsection C of this opinion, because defendants argue it in their motion and because plaintiff's response does not specifically identify it as a non-issue.

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not

be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

### A. Liability of the Municipality

■ In order for the City of Taylor to be held liable under section 1983, plaintiff must show that the alleged injury was inflicted pursuant to a governmental custom, policy, or practice. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Under certain circumstances, a municipality can be held liable in section 1983 action for constitutional violations resulting from its failure to train municipal employees. *City of Canton v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989). More specifically, inadequacy of police training may serve as a basis for municipal liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom police come into contact. *Id.*

■ In the instant case, plaintiff presents the deposition of Officer Clewett stating that the City of Taylor offered him no training in the handling of police dogs other than to issue a handbook of written policies. Defendants offer no submission of the City's written policies and make no argument that they are sufficient training for the dog handlers. Because those who come into contact with police dogs can be very seriously injured,[4] it is possible that a trier of fact could find that the City's failure to train demonstrates a deliberate indifference to the rights of those persons. The court therefore finds that there remains a genuine issue of material fact as to the adequacy of the City's training of officers who handle dogs.

### B. Qualified Immunity of the Officers

The doctrine of qualified immunity shields government officials from civil liability for damage they cause in the course of performing discretionary functions, provided "their

4. In fact, the court is aware of at least one instance in which a police dog killed a suspect by biting him in the neck. *Robinette v. Barnes*, 854 F.2d 909 (6th Cir.1988).

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). When a defendant raises a qualified immunity argument in a motion for summary judgment, the plaintiff must satisfy a two-prong test: "First, the allegations must state a claim of violation of clearly established law. Second, the plaintiff must present evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Russo v. City of Cincinnati,* 953 F.2d 1036, 1043 (6th Cir.1992) (citations omitted).

■ The use of excessive force by police officers gives rise to a section 1983 action. *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). All claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen must be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach.[5] *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 1867, 104 L.Ed.2d 443 (1989). Whether the force used by the officers in arresting plaintiff was excessive, and thus violative of clearly established law, turns upon whether their actions were objectively reasonable under the circumstances. *Id.* at 397, 109 S.Ct. at 1872.

■ Defendants argue that they are protected by the doctrine of qualified immunity because there is no evidence that defendants intentionally caused the police dog to bite plaintiff. Defendants claim that the dog bite was accidental and that Officer Clewett, the dog handler, immediately called the dog off of plaintiff. It is the law, however, that negligence on the part of police officers in the apprehension and arrest of suspected criminals may form the basis of an excessive force claim. *Pleasant v. Zamieski,* 895 F.2d 272, 275–76 (1990) (accidental shooting of suspect by police is subject to review under objectively reasonable standard). The reasonableness test is an objective standard to be applied "without regard to the [officers'] underlying intent or motivation." *Id.* at 276, *quoting Graham,* 490 U.S. at 397, 109 S.Ct. at 1872. Thus, plaintiff need make no allegation that the officers specifically intended for the dog to bite him.

■ In the instant case, then, the question is whether it was objectively reasonable for the officers to allow the dog to complete the tracking of plaintiff even though plaintiff was already in custody and completely under the officers' control.[6] Defendants offer no explanation as to why they waited for the dog to finish the tracking.[7] Plaintiff argues that there were no reasonable grounds for allowing the dog to approach him. Plaintiff also points out that the officers knew of the dog's propensity to bite because he had bitten a suspect before while under the control of Officer Clewett. Based on this previous behavior of the dog, it was foreseeable on the part of defendants that plaintiff would be bitten if the dog were allowed near him.

At his deposition, plaintiff testified that he did not see the dog prior to its biting him and that he did not know the dog was there until it bit him. He further testified that he did not hear or see any of the officers direct the dog to attack him or direct the dog to stop attacking him. Thus, the reasonableness of the officers' actions must be evaluated by reviewing other evidence such as the testimony of the officers, or the testimony of an expert as to the reasonable procedure with respect to the use of dogs after a sus-

---

5. Thus, if plaintiff intended his due process allegation as part of his excessive force claim, the due process claim fails.

6. There is some dispute among the defendants and between defendants and plaintiff as to whether plaintiff was struggling with the officers at this point. Some of the defendants testified that plaintiff was struggling, others that he was not. Plaintiff claims he was not struggling. However, none of the officers claim that the dog

was employed because plaintiff was struggling. Thus, it is unclear what import, if any, this dispute carries. Moreover, for purposes of this motion, the court must view the evidence in a light most favorable to plaintiff.

7. Perhaps there is a technical benefit to doing so, such as to maintain the training of the dog. However, without any explanation by defendants, one can only speculate.

pect has been apprehended, arrested and subdued.

For the foregoing reasons, the court finds that the reasonableness of the officers' actions in waiting for the dog to find plaintiff after plaintiff had already been arrested and subdued is a genuine issue of material fact that precludes summary judgment.

## C. Probable Cause to Arrest Plaintiff

■ In their motion for summary judgment, defendants argue that the record clearly indicates that the police officers had probable cause to arrest plaintiff. Though the complaint alleges that defendants violated plaintiff's right to be free from unlawful search and seizure,[8] plaintiff offers no factual or legal argument rebutting defendants' version of the events that led up to his arrest.

An arrest without a warrant may validly be made provided that the arrest is supported by probable cause. *Gerstein v. Pugh*, 420 U.S. 103, 113, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975). Probable cause which will justify an arrest without a warrant exists where the facts and circumstances are sufficient in themselves to warrant a reasonable belief that an offense has been or is being committed by the person to be arrested. *Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979).

In the instant case, just prior to plaintiff's arrest Officers Mize and Blanchard were investigating two abandoned vehicles which they believed had been stolen. They further believed that the area was a drop-off point for stolen cars. Seeing two cars stopping and starting as the drivers approached the suspected drop-off point, at 5:30 a.m., the officers understandably became suspicious.

Officer Mize surveyed plaintiff's actions. When the officer looked into the vehicle plaintiff had been driving, he saw steering column damage and no keys in the ignition of a running vehicle. These facts corroborated Mize's initial suspicion that the vehicle was stolen.

Officer Harmon, who ultimately was responsible for plaintiff's arrest, was relying on Mize's radio report which gave a description of plaintiff and stated that he was suspected of driving a stolen vehicle. When Officer Harmon spotted plaintiff on foot, Harmon told plaintiff to halt but plaintiff fled.

These facts clearly support the officers' belief that plaintiff had committed the crime of driving a stolen vehicle. Thus, the court finds that any claim by plaintiff that he was arrested without probable cause must fail.

## D. Effect of State Court Proceedings on the Federal Action

■ In their reply to plaintiff's response, defendants argue that because the remanded state court claims of plaintiff were ultimately decided in defendants' favor, that defendants are entitled to judgment on plaintiff's Count II under the doctrine of *res judicata*. Defendants claim that the state court judge used a federal law jury instruction in instructing the jury on the issue of plaintiff's excessive force claim brought under Michigan law.

■ In non-diversity cases in federal court, federal collateral estoppel rules apply in determining the effect of a prior judgment. *Gambocz v. Yelencsics*, 468 F.2d 837, 841 n. 4 (3d Cir.1972). The court's jurisdiction over this case arises under 42 U.S.C. § 1983. Therefore, federal collateral estoppel rules apply.

Before a court may apply collateral estoppel to bar litigation of an issue, four specific requirements must be met:

(1) the *precise* issue raised in the present case must have been raised and actually litigated in the prior proceeding;

(2) determination of the issue must have been necessary to the outcome of the prior proceeding;

(3) the prior proceeding must have resulted in a final judgment on the merits; and

(4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

8. See footnote 3.

**1192**

*N.A.A.C.P., Detroit Branch v. Detroit Police Officers' Ass'n,* 821 F.2d 328, 330 (6th Cir. 1987) (emphasis added). The issue of excessive force under Michigan constitutional law raised in the state court action between plaintiff and defendants may have been similar to the issue before this court. However, it was not "the precise issue raised in the present case." Thus, the court cannot find that plaintiff is estopped from litigating his federal law claim.

For the foregoing reasons, defendants' motion for summary judgment shall be **DENIED.**

### *ORDER*

Therefore, it is hereby **ORDERED** that defendants' motion for summary judgment is **DENIED.**

**SO ORDERED.**