Troy Lee BRANHAM and Gloria Branham, Plaintiffs,

v.

CITY OF DEARBORN HEIGHTS, Police Officer Beedle, and Police Officer Cummins, Defendants.

Civ. A. No. 92-75842.

United States District Court, E.D. Michigan, S.D.

Sept. 16, 1993.

Frank G. Becker, Southfield, MI, for plaintiffs.

Michael J. Watza, Livonia, MI, for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT TO THE CITY OF DEARBORN HEIGHTS AND DENYING SUMMARY JUDGMENT TO OFFICERS BEEDLE AND CUMMINS

GADOLA, District Judge.

Plaintiffs filed their complaint alleging violations of state law and 42 U.S.C. § 1983 in Wayne County Circuit Court. Defendants removed the case to this court pursuant to 28 U.S.C. § 1446. On its own motion, this court remanded plaintiffs' state law claims to state court. Before this court is defendants' motion for summary judgment on plaintiffs' section 1983 claim.

### I. Background Facts

On June 21, 1991, at approximately 1:00 a.m. in the early morning, plaintiffs' son, Isaac Branham, was driving through Dearborn Heights on his way to his home in the

city of Taylor. Isaac's car had a noisy muffler and Officers Joanne Beedle and Keith Cummins, members of the Dearborn Heights Police Department out on patrol that morning, ordered him to pull his car over to the side of the road. Instead of stopping along the road, Isaac continued on across the border between Taylor and Dearborn Heights, until he pulled into the driveway of his home. Plaintiffs allege that this action infuriated the officers and that they pulled into the driveway of plaintiffs' house and without provocation proceeded to direct abusive and profane language towards Isaac. Hearing the commotion, plaintiffs Gloria and Troy Branham then rushed out of their house to see what was going on. The two sides present substantially different accounts of what occurred next.

Mrs. Branham says she approached Officer Beedle and asked the officer to stop swearing at her son. When Officer Beedle told her to back away, Mrs. Branham complied and retreated five or six feet. When she did not return to the house and continued asking questions, Mrs. Branham claims that Officer Beedle walked over to her and hit her in the chest with a forearm. Mrs. Branham was knocked over by the blow and fell flat on her back, apparently tripping over some rocks along the driveway.

Mr. Branham then came off of his porch and approached his wife and the officers. According to the Branhams, Officer Cummins was enraged and was screaming profanities at them. After approaching the officers, Mr. Branham says he "very gently" placed his right arm across Officer Cummins' chest and stepped in between his wife and the officer. According to Mr. Branham, Officer Cummins then shook him violently and shoved him in the chest, knocking him back against his wife. Mr. and Mrs. Branham then toppled over into a heap, again tripping over the rocks. Allegedly, Officer Cummins stood over the Branhams and challenged Mr. Branham to hit him. Mrs. Branham then went back into the house and called the Taylor Police Department for help.

The defendants present a sharply different view of what happened that night. Officers Beedle and Cummins claim that after they pulled into the Branham's driveway, the Branhams initiated the confrontation and were physically threatening and verbally abusive towards them. The officers allege that they asked the Branhams to step back and to stop interfering with the traffic stop. Officer Beedle radioed for back-up assistance. When Mrs. Branham continued to interfere by screaming hysterically at Officer Beedle inches away from her face, Officer Beedle used her forearm to push Mrs. Branham away and to protect herself.

Officer Cummins said he then stepped in between Officer Beedle and Mrs. Branham. He told Mrs. Branham that she would be arrested if she continued to interfere with the traffic stop. According to Officer Cummins, Mr. Branham then forced his way in front of his wife and shoved Officer Cummins in the chest. In order to protect himself, Officer Cummins then pushed Mr. Branham. As a result of the push, Mr. Branham fell back against his wife and they both fell to the ground. The officers deny intentionally striking or punching either of the Branhams. They claim they used the minimum force necessary to control the situation. Neither plaintiff was arrested or charged with any crime.

Mr. Branham alleges that he suffered a sore shoulder, post-traumatic stress, and psychological deterioration among other complaints as a result of the incident. Mrs. Branham says her injuries included pain in her upper back and neck, as well as post-traumatic stress, headaches, and psychological deterioration.

Plaintiffs filed a citizen's complaint against the two officers as a result of the alleged incident. After an internal review and investigation, plaintiffs' complaint was not sustained by the investigating officer. Plaintiffs then filed their section 1983 claim.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Qualified Immunity

Defendants argue that Officers Beedle and Cummins are entitled to qualified immunity on plaintiffs' claim that they used excessive force. In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court set forth the test for determining qualified immunity where excessive force is claimed. According to the Court, "all claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395, 109 S.Ct. at 1871. The conduct of the officers must be judged according to an objective standard without regard to the subjective motivations of the individual officers. *Id.* at 397–98, 109 S.Ct. at 1872–73. An examination of an excessive force claim must take into account that

> "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circum-

stances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Id.* at 396–97, 109 S.Ct. at 1872 (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). The officers' actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*, 490 U.S. at 396, 109 S.Ct. at 1872. Thus, the issue before the court is whether a reasonable officer would have acted similarly to Officers Beedle and Cummins during the confrontation on the Branham's driveway.

Because of the hotly disputed circumstances surrounding the events in question, the reasonableness of the officers' actions cannot be determined by this court through defendants' motion for summary judgment. In this case, "the legal question of immunity is dependent upon which view of the facts is accepted by the jury." *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir.1989). The plaintiffs have met their burden of coming forward with sufficient facts to create a genuine issue of material fact. *See Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987) (discussing burden on non-movant). The accounts of what happened during the night in question are materially and substantially different. As a result, summary judgment for defendants Beedle and Cummins will be denied.

## IV. Municipal Liability

■■■ In order for the City of Dearborn Heights to be liable under section 1983, plaintiffs must show that the alleged injuries were inflicted pursuant to a governmental custom, policy, or practice. A municipality cannot be found liable based on respondeat superior or vicarious liability. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985); *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). In addition, a single incident of unconstitutional activity does not establish an official policy or practice of a municipality sufficient to render the municipality liable for damages under section 1983. *Tuttle*, 471 U.S. at 823, 105 S.Ct. at 2436.

In their complaint, plaintiffs allege that Dearborn Heights had "unarticulated policies and customs which allowed the use of unreasonable seizures and searches." Furthermore, it is alleged that Dearborn Heights inadequately trained its officers, failed to discipline constitutional violations, and did not properly develop constitutional standards to govern police conduct that would have prevented the use of excessive force against the plaintiffs.

In their response to defendants' motion for summary judgment, plaintiffs only cite the fact that their internal complaint with the Dearborn Heights Police Department was not sustained in support of their claim against the city. According to plaintiffs, because their internal complaint was denied, "the City of Dearborn Heights is deemed to have ratified or acquiesced in the unconstitutional actions of its police officers." The plaintiffs fail to cite to any other policy, ordinance, regulation, action, or decision by the city or its officials upon which the defendant officers acted to deprive plaintiffs of their constitutional rights.

It is clear that plaintiffs have failed to meet their burden under *Monell*. They have made no showing of any policy or practice on the part of Dearborn Heights that led to the alleged constitutional violations. There is no basis or support for plaintiffs' mere allegations that the city is liable under section 1983. Their pleadings provide no factual support or specific instances for its claim against the city. The plaintiffs' response merely recites the boilerplate allegations about policy, training, discipline, custom, and standards that were first repeated in their complaint. The denial of a citizen's complaint is not enough. The very fact that an internal grievance procedure exists and that an extensive investigation took place as a result of the plaintiffs' complaint only indicates that the city has established a system and standards for disciplining and controlling its police officers. Furthermore, defendants came forward in their motion with evidence that the police force is adequately trained and that action is taken to ensure that police officers are made aware of constitutional requirements and are trained accordingly.

Thus, after examining all of the evidence in the light most favorable to the plaintiffs, it is clear that there is no genuine issue of material fact on the issue of municipal liability. Plaintiffs have failed to show any policy, practice, or custom by the city that resulted in the alleged constitutional violations. As a result, Dearborn Heights is entitled to summary judgement.

## ORDER

Therefore, it is hereby **ORDERED** that summary judgment is **GRANTED** for the City of Dearborn Heights and **DENIED** for Officers Beedle and Cummins.

**SO ORDERED.**