**Aaron Donald FRANKLIN and Linda Franklin, Plaintiffs,**

v.

**CITY OF PONTIAC, a Municipal Corporation, R.M. Turner, Individually and in His Representative Capacity as Chief of Police, Officer Troy Estes, Officer Robert Ford, and Officer Todd Hunt, Individually and in Their Representative Capacity as Policy Officers for the City of Pontiac, Jointly and Severally, Defendants.**

Civ. A. No. 94–70293.

United States District Court, E.D. Michigan, Southern Division.

May 18, 1995.

Mark H. Freedman, Leon B. Jukowski, Florka & Jukowski, Pontiac, for defendant Todd Hunt.

Marshall C. Disner, West Bloomfield, for plaintiff Linda Franklin.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiffs Aaron Donald Franklin and Linda Franklin filed a complaint alleging violations of state law and 42 U.S.C. § 1983. The court dismissed plaintiffs' supplemental state law claims. Before the court is defendants' motion for summary judgment on plaintiffs' section 1983 claims. For the reasons discussed below, the court will grant defendants' motion for summary judgment.

### I. Facts

On the evening of December 11, 1992, plaintiff Aaron Franklin helped a friend repair frozen water pipes. He then returned home. When he pulled into his driveway, his car slid into his home, causing minor damage. Mr. Franklin maintains that he was not intoxicated at the time of this car accident. Defendants argue that Mr. Franklin was intoxicated at that time.

After arriving home, Mr. Franklin drank a few beers. Plaintiffs allege that Mr. Franklin then suffered a seizure. Mr. Franklin had begun suffering seizures after he underwent surgery for a brain tumor in 1985. Mr. Franklin's son called 911 for emergency medical assistance. A Pontiac Fire Department EMS team arrived to the home of the plaintiffs. The parties present substantially different accounts of the events following the arrival of the Pontiac Fire Department EMS team.

According to defendants, when the EMS team arrived, Mr. Franklin was violent and had to be restrained. Captain John Childers, a member of the EMS team, testified at his deposition that Mr. Franklin "was tearing the house up" and "standing up throwing stuff" when EMS arrived at the Franklin home. The EMS team then attempted to restrain Mr. Franklin. According to Childers, Mrs. Franklin begged the fire department personnel not to leave her husband with her because she was afraid.

Defendant Troy Estes testified during his deposition that he received two calls that evening to proceed to the Franklin home. According to Estes, Mrs. Franklin told him that she called the police because her husband came home drunk, ran into the side of the house with his car, came inside the house and became abusive to her. Estes says that when he entered the Franklin home, he saw Mr. Franklin fighting with the members of the EMS team. Estes immediately noticed that Mr. Franklin smelled of intoxicants. Estes states that he ordered the plaintiff to stop fighting with the EMS team or he would be "cap-stunned" and Mr. Franklin responded by yelling "I'm going to kill you all when I get up." Estes then advised Mr. Franklin that he was under arrest for drunk driving and "cap-stunned" Mr. Franklin. Subsequently, Estes attempted to handcuff Mr. Franklin. As Estes and members of the EMS team attempted to walk Mr. Franklin to Estes' patrol car, Officers Robert Ford and Todd Hunt arrived and assisted Estes. Mr. Franklin was arrested and charged with operating a motor vehicle while under the influence of liquor ("O.U.I.L.") and Obstructing and Resisting Arrest.

Plaintiffs allege that when the EMS team arrived, Mr. Franklin was passed out on the floor in a seizure. According to Mrs. Franklin, Officer Estes was about to hit Mr. Franklin with a club but she yelled at Estes not to hit her husband because Mr. Franklin had undergone brain surgery. Officer Estes then sprayed Mr. Franklin in the eyes. According to Mrs. Franklin, the EMS team and the officers were rough with her husband, twisting his arm and banging his head on the kitchen floor about eight times. She says when she told them that her husband had brain surgery, she was asked to go into another room. She states that she was never asked any questions by the officers and that she did not understand why her husband was being arrested for drunk driving when he had been at home.

At 4:11 a.m. on December 12, 1994, the police brought Mr. Franklin to the Pontiac Osteopathic Hospital for examination. On December 13, 1994, Mr. Franklin's chest pain was diagnosed as Costrocondrial Separation.

On December 14, 1992, Mr. Franklin pleaded not guilty to the charges of O.U.I.L. and Obstructing and Resisting. On January 11, 1993, Mr. Franklin entered a plea of guilty to a count of reckless driving, which was added at that time. The charges of the O.U.I.L. and Obstruction and Resisting were dropped.

Plaintiffs filed a complaint in the instant action on January 25, 1994, alleging claims under state law and 42 U.S.C. § 1983. On February 1, 1994, this court dismissed plaintiffs' state law claims without prejudice, choosing not to exercise its discretion to accept supplemental state law claims. The court retained jurisdiction over plaintiffs' section 1983 claims. Before the court is defendants' motion for summary judgment.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Analysis

#### A. City of Pontiac

At oral argument, plaintiffs conceded that they are unable to maintain a claim against the City of Pontiac. Therefore, the court will dismiss the City of Pontiac from this action.

#### B. R.M. Turner's Supervisory Liability

At oral argument, plaintiffs conceded that they are unable to maintain a claim against R.M. Turner. The court will therefore dismiss defendant Turner from this action.

#### C. Res Judicata/Collateral Estoppel

Plaintiffs originally filed both their state and federal claims in this court. After this court dismissed plaintiffs' state law claims, plaintiffs filed a complaint in the Oakland County Circuit Court based on the same state law claims. On December 7, 1994, the state court granted summary judgment in favor of defendants. In defendants' supplemental brief in support of their motion for summary judgment, defendants argue that this court must give full faith and credit to the state court judgment and grant summary judgment in favor of defendants.

Defendants argue that plaintiffs' section 1983 cause of action is essentially the same as plaintiffs' state court cause of action because both are premised upon the alleged use of excessive force. Defendants therefore argue that the state court judgment precludes this court from addressing the merits of plaintiffs' claims. At oral argument, plaintiffs stated that if the court found that plaintiffs' claim of excessive force is precluded by principles of res judicata and collateral estoppel, then plaintiffs' entire action should be dismissed. However, plaintiffs argue that the action should not be dismissed because they did not have the opportunity to fully and fairly litigate their constitutional claims. Therefore, the issue before the court is whether plaintiffs' excessive force claim is precluded by principles of res judicata or collateral estoppel.

■ The Full Faith and Credit Clause of the United States Constitution is implemented by the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738. The statute reads in pertinent part:

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738. The Supreme Court has conclusively determined that in a section 1983 action, a Federal Court must give state court judgments the same preclusive effect that a judgment would be given under the state law in which the judgment was originally rendered. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

■ The doctrines of res judicata and collateral estoppel are defined under Michigan law in the following manner. The prerequisites to application of the doctrine of res judicata are: (1) the prior action was decided on the merits; (2) the matter contested in the second action was or could have been resolved in the first action; and (3) both actions involved the same parties or their privies. *Eaton Road Comm'rs v. Schultz*, 205 Mich.App. 371, 521 N.W.2d 847 (1994); *Fellowship of Christ Church v. Thorburn*,

758 F.2d 1140, 1144 (6th Cir.1985). Res judicata is designed to avoid relitigation of claims, to prevent vexation, confusion, chaos, and the inefficient use of judicial resources. *Id.* Collateral estoppel "precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid judgment and the issue was actually and necessarily determined in the prior proceeding." *Bullock v. Huster,* 209 Mich.App. 551, 532 N.W.2d 202 (1995). Collateral estoppel was designed to relieve parties of multiple litigation, conserve judicial resources, and encourage reliance on adjudication. *Eaton,* at 377, 521 N.W.2d 847.

The state action filed by plaintiffs was decided on the merits. A grant of summary judgment is considered a determination on the merits. *City of Detroit v. Nortown Theatre, Inc.,* 116 Mich.App. 386, 391, 323 N.W.2d 411 (1982).

The action before this court involves the same parties as the action in the state court. Aaron and Linda Franklin were the only plaintiffs in both the state action and the action before this court. Defendants Estes, Ford, and Hunt were defendants in both actions. The action before this court includes defendants City of Pontiac and R.M. Turner, but plaintiffs have conceded that they do not have a claim against these two defendants. Therefore, the parties to both actions are the same.

Plaintiffs argue that they were not fully and fairly able to litigate their excessive force claim because their state court complaint did not allege claims under section 1983. The court finds that the issue of excessive force was litigated and resolved in the state court action. Plaintiffs' state court complaint alleged, *inter alia,* that defendants Estes, Ford, and Hunt used "grossly excessive and unreasonable force." In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that "all claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness standard.'" *Id.* at 395, 109 S.Ct. at 1871. Therefore, the issue before this court under plaintiffs' section 1983 excessive force claim is whether a reasonable officer would have acted as defendants acted under the same circumstances. *Branham City of Dearborn Heights,* 830 F.Supp. 399 (E.D.Mich.1993). The state court judge very clearly determined this issue, finding that "the amount of force used was not egregious but was reasonable in light of the circumstances that they [defendants Estes, Ford, and Hunt] were faced with." Transcript of Motion for Summary Disposition Before the Honorable Francis X. O'Brien, Exhibit B to defendants' supplemental brief in support of their motion for summary judgment, at 29. The two issues are identical. The facts to be considered by this court are identical to the facts considered by the state court. Therefore, plaintiffs have failed to substantiate their argument that they did not have the opportunity to fully and fairly litigate whether defendants used excessive force against Mr. Franklin.

### *ORDER*

Therefore, it is hereby **ORDERED** that defendants' motion for summary judgment is **GRANTED**.

**SO ORDERED.**